## COBB v. CAGE.

1. A declaration by the sheriff that he levied an execution in favor of the plaintiff, on certain slaves who were present, in the possession of a trustee, for the purpose of being sold under a deed of trust ; without attempting to take them into his possession, or otherwise control them, does not amount to such a divestiture of the authority of the trustee to sell the slaves, as will affect the title acquired by a purchaser under him.

Writ of error to the Circuit Court of Madison.

THIS was the trial of the right of property, pursuant to the statute. The facts are disclosed by a bill of exceptions, and are substantially as follows : The plaintiff in execution recovered a judgment against Benjamin Huggins, in the County Court of Madison, on the 15th February, 1841, for $185 11, besides costs ; an *alias fi. fa.* was issued thereupon, on the 23d of March, 1843, and placed in the sheriff's hands on the 24th of the same month. Huggins, by deed of trust, executed on the 30th November, 1840, conveyed two slaves, viz : Charity and Matilda, together with other property, to John Allison, to secure to the claimant the payment of $2,100, which the grantor was indebted to him. Of this sum, an instalment of $1,000, with interest, became due on the 1st day of January, 1842. The deed provided for the retention of the possession of the slaves, &c. by Huggins, until he made default in the payment of the first instalment of the debt, intended to be secured ; when this occurred, the trustee, upon the request of the grantor, should sell the slaves, &c.

The default of Huggins was shown, and that the trustee advertised the property for sale, pursuant to the deed, on the 24th March, 1843. On that day, and a short time previous to the sale, the sheriff declared that he levied the execution on the slaves—they being present, but not taken into his possession. The trustee then, without having been divested of the possession of them, offered the slaves for sale, when they were bought by

the claimant, to whom they were delivered—it being known that they had been levied on.

On the first of May, 1843, the purchaser at the sale by the trustee interposed his claim to the slaves by making affidavit and giving bond, &c.

The Court charged the jury, that if they believed from the evidence, that the levy was made, as shown by the evidence, before the sale by the trustee, they must find the property liable to the execution.

S. Parsons, for the plaintiff in error. The verbal levy of the sheriff did not invest him with the possession, as against the trustee, who had the actual adverse possession, under which he sold the slaves. If it did, the subsequent sale by the trustee would not have been maintenance, but would have invested the purchaser with title subject to the execution. [Story on Bailm. § 135, (3d ed.) Bigelow v. Wilson, 1 Pick. Rep. 485.] The statement by the trustee, at the time of the sale, that the slaves had been levied on, was not a recognition of the regularity of the levy, but refers to what the sheriff had just said.

Conceding the validity of the levy, it was not necessary that the claimant's title should have been consummated previous thereto, to enable him to succeed in the present case. His title was complete before he interposed a claim, and the facts show that the defendant in execution had no interest that could be sold. He might have maintained detinue, and if so was entitled to the statutory remedy, which he adopted. [Clay's Dig. 213, § 62; 211, § 52.]

J. W. McClung, for the defendant in error.

COLLIER, C. J.—The mere announcement of the sheriff that he levied the execution, without any effort to acquire possession of the slaves was inoperative for all purposes. An officer must actually seize the goods on a *fieri facias* before he can sell; though it has been said that a seizure of a part in the name of the whole, is a good seizure of all. [5 Dane's Ab. 39.] A regular levy on the defendant's goods invests the officer with a special property in them, and he may have trespass or trover against any one who takes them away; for he is answerable to the plaintiff for their value, and the defendant is dis-

charged from the judgment, and all further execution, if the officer has seized goods to the amount of the debt, although he does not satisfy the plaintiff or has not returned the writ. [See also, Bingham on Judgment and Ex'ns, 243 to 248; 5 Dane's Ab. 18.]

It has been held, that, in order to make a valid levy on personal property, the sheriff must have it within his power and control, or at least within his view; and if, having it so, he makes a levy upon it, it will be good, if followed up afterwards, within a reasonable time, by his taking possession, in such manner as to apprise every body of the fact of its having been taken in execution. [3 Rawle's Rep. 405-6.] In the present case, the sheriff did nothing more than merely to state that he levied the execution of the plaintiff below, on the slaves in question. He did not take them into possession, nor can we infer from the bill of exceptions, that he attempted to exercise any control over them. Under these circumstances there was no such divestiture of the authority of the trustee to sell, as would in any manner affect the title acquired by the claimant as a purchaser.

But if the levy was valid, is it certain that the Circuit Judge did not claim for it a potency, to which it is not entitled? There can be no question that the interest of a grantor in possession of property covered by deed of trust, may, before the time when the trustee is authorized to take possession of, or sell, it, to execute the purposes of the deed, be sold under a *fieri facias*. But after this time has arrived, the right to the immediate possession, authorizes the trustee to assert his legal title against the creditors of the grantor, whose executions may be levied upon the trust property.

In Magee v. Carpenter, 4 Ala. Rep. 469, it was decided that the interest of a mortgagor in possession, might, before default, be sold under a *fieri facias* against him; but if the mortgage, after that event, conferred upon the mortgagee an immediate right of possession, he had a legal title which he could assert against the creditors of the mortgagor, at whose instance the property had been seized. In the P. & M. of Mobile v. Willis & Co. 5 Ala. Rep. 770, this Court declared the law in no equivocal terms, and held that a claim of property was, in such a case, rightly interposed by the mortgagee. [See, also,

Davidson & Stringfellow v. Shipman, et al. 6 Ala. Rep. 27.] There is no difference in principle between the case of a trustee and mortgagee; if they are entitled to immediate possession, each may assert his claim.

If a trustee may become a claimant under the statute, against an execution creditor of the grantor, will the levy so divest his powers under the deed, as to make a sale by him, afterwards, inoperative? In Bigelow v. Wilson, 1 Pick. Rep. 492, it is said, that an attachment of property does not change the estate of the debtor, or take away his power of alienation; it gave only a lien, and the debtor might legally convey the property, subject to the lien. This lien the purchaser might discharge by payment of the debt before execution executed, or he might afterwards redeem the estate, if it were by law redeemable. If the debtor might, after levy, alienate the property, why may not a trustee on whom he previously conferred the power of sale, for the benefit of a creditor, dispose of it as the deed directs? If such a disposition would be legal, should not the purchaser be permitted to interpose his claim of right? But it is unnecessary to consider this question further, as our conclusion upon the first point is decisive of the case.

The judgment of the Circuit Court is reversed, and the cause remanded.