## POWELL v. THE GOVERNOR, ex rel.

1. It is irregular to ask a witness what was the estimated cash value put on lands by the neighborhood generally. At least this is but hearsay, and those forming the opinions could themselves be called as witnesses.
2. It is the duty of the sheriff so to provide, that the property levied on by him will probably be sufficient to satisfy the executions in his hands; but if he levies on lands which ought, in the estimation of prudent individuals, to produce sufficient, but does not, this furnishes no reason to charge the sheriff, unless actual injury has resulted to other parties from his mistake, and he exercises all the diligence required by law of him, when, after an unproductive sale of land so levied on, he makes an immediate levy on other property, of value sufficient to satisfy the execution, although that cannot be sold until after the return day and is in fact replevied.
3. A sheriff is not bound to levy on personal property, when a sufficient levy can be made, and is made, on land.
4. Nor is the sheriff required to sell at the first sale's day after the execution is in his hands. He has the discretionary power to sell on any of the sale days previous to the return day of the execution to be satisfied.

Writ of Error to the Circuit Court of Coosa.

ACTION of debt upon a sheriff's bond, at the relation of Patterson, against Powell and others, as the sureties of one Campbell. The breach assigned in the declaration is, that the said Campbell wholly neglected and refused to levy and satisfy a writ of *fi. fa.* in his hands, as sheriff, at the suit of the plaintiff, against the goods, &c. of one Hobdy, for $234 21.

At the trial, the plaintiff produced and read in evidence the writ of *fi. fa.* which issued the 6th of October, 1841, and was returnable on the 4th Monday in March, 1842. On it was indorsed, that it came to the sheriff's hands on the 15th October, 1841, and a levy on the 1st of November of the same year, upon certain lands. Also, that these lands were sold on the first Monday of March, 1842, and the proceeds applied to older *fi. fa's.* Also, a levy on four slaves, for which a forthcoming bond was taken, 8th March, 1842.

The plaintiff then offered in evidence other executions

against Hobdy, which were in the sheriff's hands at the same time, to prove the extent of the liens then against his lands. One of these was for $1000, and another for $127. The defendant objected to this evidence, but the Court admitted it. The plaintiff next offered the execution docket of the clerk of Coosa Circuit Court, to show, that an execution therein described was delivered to the said sheriff, and returned by him, and proved that it had been searched for, but not found in the files, and that the entry on the docket was in the writing of a former clerk of the court, who, at the time of the trial, resided in Mississippi. This was allowed against the objection of the defendant. The entry is thus—"Issued and delivered to W. J. Campbell, sheriff, on the 15th October, 1841, levied on land 1st November, 1841, and sold 7th March, 1842 ; proceeds applied to former *fi. fa's.·*

In order to prove the value of the lands described in the levy, the counsel for the defendant proposed to ask a witness, "what was the estimated cash value put on the lands levied, by the neighborhood generally." The Court excluded the question in this form, but allowed the party to ask the witness, what was his own estimate of the value.

The plaintiff offered evidence conducing to prove, that when the sheriff levied on the land, Hobdy had slaves and other personal property, more than sufficient to satisfy all the executions then in the sheriff's hands. Campbell, the sheriff, died during the spring Court of the year 1842.

The defendant offered evidence conducing to prove that the lands levied on, at the time of the levy, were then of the cash value, at public sale, of $1600 or $1800.

Upon this evidence, the defendant requested the Court to instruct the jury, that if the sheriff levied on lands sufficient in value, when estimated at what the same would sell for at public sale, for cash, to satisfy the executions in his hands, and that he sold it in time to make return thereon of the sales of the same, to the term of the Court to which the executions were returnable ; and that if, as soon as he found the lands did not sell for enough to satisfy the executions in hand, he forthwith levied on all the property of the defendant which he could find, and died before the next sale day, this was due diligence, and they ought to find for the de-

fendant. This was refused, and the jury was charged, that if they found the sheriff levied the execution as set forth in his return, on the 1st of November, on the lands therein described, and that the lands were not sold until the first Monday of March thereafter, and that the proceeds went to satisfy older executions and levies on the same, and that the defendant in execution then had slaves and other personal property, sufficient to satisfy said execution, and other executions in his hands, and that he levied on the slaves on the 8th of March, 1842, as stated in his return,* and then took a forthcoming bond for their delivery on the first Monday of April, 1842, a sale day subsequent to the return day of the execution, then the sheriff had not used due diligence, and they ought to find for the plaintiff.

The defendants excepted to these several rulings of the Court, and they are now assigned as error.

L. E. PARSONS, for the plaintiffs in error, submitted the following points :

1. The action is for not using due diligence in making the money ; therefore, any evidence to prove that such diligence was used, was proper. The estimated value of lands *in the neighborhood* where they were situate, is the fact which will excuse or fix the liability of the sheriff, and therefore the question asked was proper.

2. The charge asked for was proper, because it is the conclusion which the law draws from the facts in evidence. The sheriff is not bound to make a levy which, under all circumstances, must produce the sum to be raised. Indeed, he would be liable for an excessive levy, if he seized more than was probably sufficient for this purpose.

3. If the charge asked for is objectionable, as asking a conclusion upon the facts, that given is equally so, for it takes all discretion from the jury, and pronounces that the facts disclosed amount to no defence.

No counsel appeared for the defendant in error.

GOLDTHWAITE, J.—1. The Court below was correct in refusing to allow the defendant's witness to answer what was

the estimated cash value put on the lands by the neighbor-
hood generally, because the question was calculated to elicit
nothing more, than a second-hand notion of the opinions of
others, who could themselves furnish the best evidence of
their own opinions, and might have been called as witnesses.
[P. & M. Bank v. Borland, 5 Ala. Rep. 531.]

2. The matters of law arising out of the charge, and refu-
sal to charge, are of considerable importance in connection
with the duties of sheriffs, and therefore require a more ex-
tended examination.    It will be seen that the entire amount
of the executions having a preference over the one which is
the cause of this suit, is $1127, and that these together make
the aggregate of $1361, excluding all mention of another,
junior in date to all of them, the amount of which is not
mentioned, and is, for the reason just recited, entirely im-
material.    The estimated cash value of the lands at public
sale, is from 1600 to $1800, and the question is, whether a
levy upon lands of this value, is a sufficient exercise of dili-
gence, by the sheriff, to excuse him from an action, when
the land is afterwards sold for such a sum as is insufficient
to satisfy the older executions.    It is the duty of the sheriff,
in executing the powers attached to his office, so to provide,
that the property levied on by him, will probably be suffi-
cient to satisfy the executions which he levys; but he is not
bound, nor, indeed, will he be justified in making an exces-
sive levy.    What will constitute either an excessive, or in-
sufficient levy, must necessarily, to some extent, depend up-
on the estimated value of property by individuals; and if
the sheriff is mistaken in that which he puts upon it, this
will furnish no reason to charge him, unless actual injury
has resulted to other parties from his mistake.    Although
sheriffs are held, in general, to a very strict accountability,
yet when they proceed *bona fide*, they will be protected by
the courts.    Thus, whenever real doubt exists with respect
to the title of property which they are required to seize, the
time of return will be enlarged at their instance, until a pro-
per indemnity is offered.    [Watson on Sheriffs, 195.]    A
sheriff is not required to sacrifice the property of the execu-
tion debtor, at all hazards, nor, indeed, will the court always
protect him if he does so.    In Keightly v. Bush, 3 Camp. 521,

Lord Ellenborough said, if the goods taken in execution really were worth £300 or £400, he thought the sheriff was liable for selling them for £72. The return ought to have been, that he had taken goods, which remained in his hands for want of buyers. If a chattel worth £1000 is put up to sale, and only £5 is bid for it, the sheriff ought not to part with it for that sum, and he may fairly say it remains in his hands for want of a buyer. He ought to wait for a *venditioni exponas*, the meaning of which is, "sell for the best price you can obtain." See also, Watson on sheriffs, 199. But, although it is thus held, that a sheriff is not obliged to sacrifice the property of a debtor at a greatly under-price, he will not be justified in capriciously returning that the goods remain unsold, when he has not taken the necessary and proper means to expose them to a fair sale. [Barnard v. Leigh, 1 Stark. N. P. C. 41.] In the present case, we are not informed what the lands produced, but it appears, that immediately after the sale, the sheriff effected an additional levy on slaves, amply sufficient to discharge the executions, which were released, as they lawfully could be, upon a forthcoming bond. This, we think, was the exercise of all the diligence which the law requires of the officer, unless there is some statutory regulation, which imperatively requires the sheriff to levy on slaves or other personal property when that can be had, instead of land; or unless he is bound to proceed and sell at the first sale day after the levy is made. We shall consider each of these positions in its order.

3. An act passed in 1807, by some of its terms, would seem to indicate that a levy should first be made upon goods and chattels, but it was passed solely with reference to non-resident debtors, and made their lands subject to levy and sale, when those belonging to a resident were exempt. [Clay's Dig. 205, § 16.] This appears from the general statute subjecting lands, &c. to execution, having been passed four years afterwards. [Ib. § 17.] In practice, there is no reason why the sheriff should levy upon the personal goods of the debtor in preference to his lands, when these are amply sufficient to produce the necessary sum. Indeed, it frequently would be unnecessarily oppressive, to compel a perfectly solvent person, to produce and replevy his slaves or other per-

sonal estate, when his lands will afford equal security. In this respect, however, as in all others, the sheriff would not be permitted to excuse himself, whenever it became obvious that this mode of levy was selceted, not as the means of actually providing for the collecting of the debt, but to give ease and favor to the debtor. We conclude then, there is nothing in our statutes which takes from the sheriff the discretion to levy upon either description of property.

4. With respect to the time when the sheriff shall sell— this seems to be left to his discretion, at least so far that he may do so upon any of the sale days which intervene between the period when the execution is placed in his hands, and the return day of the execution. The act of 1818, indeed, provides, that the sheriff shall proceed to levy any execution in his hands, and make sale of the property levied on, at such times as by law is directed; but the chief object of the statute seems to be, to make the sheriff liable for not paying over the money when collected, instead of ascertaining and directing that it shall be made *forthwith*. [Clay's Dig. 205, § 21.] The act of 1812, which directs the sheriff to return the property levied on to the debtor, upon his entering into a forthcoming bond, does not indicate that the bond shall be for the production of the property at the first sales day, but seems to allow the sheriff to appoint the day, according to his discretion. The act of 1826, which gives the summary remedy by motion, evidently contemplates that the officer has the whole time between the issuing of the execution and its return day, to make the money, as it authorizes the motion only when the failure continues to the first day of the term. [Ib. 218, § 85.]

When the extent of the business in some counties is considered in connection with this subject, it will be seen how onerous would be the duties of this officer, if he was bound at his peril, to levy and sell on the first sales day. If such were the law, it would be difficult to discharge the duties of the office in person, in most cases, or in many, to exercise an efficient supervision over the necessary deputies. Independent of this, we think the legislative intention has never yet been evinced, that the sheriff shall, under all circumstances, conclude the business of executions as soon as it was possi-

ble to do so.   If such had been the intention, different return days would have been 'provided.   We therefore conclude, that the sheriff has the discretionary authority to sell upon any of the sale days previous to the return day of the execution, which he is required to satisfy.   Upon the facts in evidence, we think it should have been left to the jury to determine, whether the lands levied on were of value sufficient to authorize a prudent man to suppose they would produce, at public sale, a sufficient sum to satisfy the relator's execution, as well as those which created a prior lien ; and that if they were of such value, the defendant is not liable to this action, if the sheriff, within a reasonable period after the sale, re-levied the execution upon other property of value sufficient to satisfy it.

As the charge does not conform to this view of the case, the judgment is reversed and remanded.

☞ Decided at June term, 1845, and omitted by mistake.