## EASLEY, ET AL. v. WALKER.

1. *Semble,* that the execution of a forthcoming bond for property subject to seizure, estops the defendant from controverting the regularity of the levy; or if a sheriff declares a levy upon property within his power or control, and commits its custody to a third person, as his agent, the levy would be good, but the officer having parted with the thing otherwise than the law requires, will be liable for the consequences, if the custodian abuses his trust.

2. On the 26th Nov. 1845, a *fi, fa.* for five hundred and twenty dollars was placed in the hands of the sheriff against the goods of four defendants—on the 20th January, 1846, he proposed to one of the defendants to levy it, when he referred him to five slaves which he had at the house of S, about one hundred yards distant from the court-house of the county ; S informed the sheriff that the defendant's interest in the slaves would sell for a sufficient sum to satisfy the *fi. fa.,* though he, (S.) had an interest in them ; that the sheriff might levy on them, and he, (S.) would bid for them the amount of the execution. S. desired to retain the slaves until he could settle with the defendant, undertaking that they should be forthcoming on

the 2d February, 1846 the day appointed for the sale. A levy was accord-ly indorsed by the sheriff. The defendant testified that the slaves were his property, and that S. had no right to them, although he had suffered them to remain in his possession for three years. At the time of the levy the slaves were worth $1500. On the day appointed for the sale, an injunction, awarded at the instance of S., was served on the sheriff, by which all proceedings under the levy were stayed : *Held*, that these facts do not show such negligence on the part of the sheriff as to subject himself and sureties to liability for the want of diligence in making the money on the *fi. fa.*

Error to the County Court of Talladega.

THIS was a motion, under the statute, at the suit of the defendant in error, against Easley, as sheriff of Talladega, and the sureties on his official bond. Several pleas were interposed, which need not be here noticed, as issues were formed and submitted to a jury, and the questions now presented do not controvert the adaptation of the proof to the issues, but the sufficiency of the facts proved to bar a recovery.

The case litigated in the county court, is stated at length in the bill of exceptions, but the facts need not be here recited, except so as far may be necessary to understand the opinion of this court. On the 26th November, 1845, the execution in question was placed in the hands of the sheriff, and it commanded to be made of the goods and chattels of Solomon Spence, R. Stinnett, B. A. Smoote, and J. H. Townsend, the sums therein expressed.

It was proved on the part of the defendants, that on the 20th January, 1846, the sheriff proposed to Spence to levy the execution, to which the latter replied that he had five slaves then in the possession of Joseph N. Savory at his house in the town of Talladega, and about one hundred yards from the court-house. The sheriff then saw Savory who informed him that Spence's interest in the slaves would sell for a sufficient sum to satisfy the execution ; but that he (Savory) had an interest in them. He said further that the sheriff might levy on them, and he (Savory) would bid for Spence's interest the amount of the execution. A short time after the

levy, Savory said he desired to retain possession of the slaves until he had a settlement with Spence, and it was agreed that he should retain them until the day of sale, which was the 2d February following, Savory undertaking that they should be forthcoming on that day. Neither the sheriff or his deputies took the slaves into possession, but indorsed the levy upon the execution after the conversation above stated.

Spence testified that the slaves were his property, that they had been purchased and paid for by him, and that Savory had no right to them, though they had been permitted to remain in his possession for three years without interruption. It was proved that the slaves at the time of the levy were worth fifteen hundred dollars. On the day appointed for the sale an injunction was served on the sheriff, by which all proceedings under the levy were injoined. This injunction was awarded at the instance of Savory out of the court of chancery sitting in Talladega. The sum required to be made upon the execution was about $520, including damages and costs.

The defendant's counsel prayed the court to give to the jury sundry charges—all of which were given, with a qualification added to each as follows : " But if the jury believe that no levy was made under the *fi. fa.* set forth in the plaintiff's suggestion before the 20th day of January, 1846, and that the *fi. fa.* was received by the sheriff on the 26th November, 1845, then, although the jury may believe there was a levy made on the 26t Jan'y, 1846, and that such levy was injoined by a third person, the injunction would not be a sufficient defence in this case, if the allegations of the suggestions are proved." The jury returned a verdict for the plaintiff in the motion, and judgment was rendered accordingly against the sheriff, and two of his sureties.

W. P. CHILTON, for the plaintiff in error, insisted that the facts proved at the trial, show that the sheriff acted with sufficient promptness in the performance of his duty ; and that the injunction issued at the suit of Savory, took from him the power to make the money on the execution, as the return day was too near at hand to permit another levy and sale. Whether there be evidence recited in the bill of exceptions to show the pertinency of the charge excepted to, or not, it must be

85

intended to have been elicited by the proof, according to repeated decisions of this and other courts. In this case one forthcoming bond had been forfeited, so that there could have been no delay in that way; as the statute does not allow a second bond to be taken.

What was said, both by Spence and Savory, as to the slaves in the possession of the latter, was altogether sufficient to have authorized the levy on them, although each of the other defendantsin the execution may have had other property in possession, amply sufficient to satisfy it. For any thing appearing to the contrary, the levy may have been sufficient; but this was not made a question in the circuit court, and will not of course be here considered. The inquiry was, whether the injunction excused the failure to make the money. Savory promised to keep the slaves for the sheriff, and produce them on the day of sale; his possession then was the possession of the sheriff.

The plaintiff had his remedy on the injunction bond, but the sheriff cannot maintain an action upon it. If other objections are unavailable, it is then insisted that the judgment should be remodelled, so that it be only for the amount of the *fi. fa.* when issued, and damages. He cited Powell v. The Gov. 9 Ala. Rep. 36; 1 Stew. & P. Rep. 71; 9 Porter's R. 488; 3 Ala. Rep. 28; 4 Id. 42; 8 Id. 73; 1 Conn. R. 387; 6 Martin's (Lou.) Rep. 238; 1 Binney, 85, 90; 4 Cow. R. 483; 16 Mass. Rep. 108; 11 Pick. Rep. 469; Lit. Sel. Cases, 273; 3 Wend. Rep. 448; 9 Porter's Rep. 484.

S. F. RICE, for the defendant in error. The sheriff did not act with sufficient promptness—he should have levied the execution within time to make the money by return day, in despite of delays which did not suspend its force. Here it was known the right of Spence to the slaves in Savory's possession, was controverted, and this should have prevented them from being levied on, *when each of the defendants in execution* had a sufficiency of property in posession to satisfy it, which could have been seized. But the proof shows that there was no levy in point of fact—the slaves were never taken into the sheriff's possession, nor does it appear that they were really seen by him, or at any time under his control.

The declarations of Savory that he had no property subject to the payment of his own debts, were inadmissible; because Savory was himself a competent witness.

He also contended that the pleas which were adjudged bad on demurrer, were not well pleaded, because the sureties united with the sheriff in making defence : *Further,* that the judgment, in its amount, conformed to decisions of this court ; and as to the other questions raised by the plaintiffs in error, they had all been decided adversely to them. He cited 1 Day's Rep. 128 ; 2 Esp. Rep. 475 ; 2 Kinne's L. Comp. 577-8 ; 8 Porter's Rep. 147 ; 3 Ala. Rep. 28 ; 8 Id. 342 ; 3 Wend. R. 446 ; 2 N. *&* McC. Rep. 392 ; 5 Ark. Rep. 376 ; 1 Wash. C. C. Rep. 29 ; 2 Porter's Rep. 315 ; 7 Ala. Rep. 703 ; 3 Missouri Rep. 52 ; 1 Stew. *&* P. Rep. 220 ; 9 Porter's 484 ; 4 Porter's Rep. 252 ; 8 Ala. Rep. 650 ; Spence v. Tuggle, and Bradford v. Bush, at this term ; 3 Car. *&* P. Rep. 179 ; 11 John. Rep. 185 ; 10 Conn. Rep. 9 ; 7 Cow. Rep. 752 ; 7 Metc. Rep. 227 ; 1 Ala. Rep. 543 ; 3 Id. 504 ; 5 Id. 65, 171; 6 Id. 248, 516 ; 12 Ohio Rep. 210.

COLLIER, C. J.—There is nothing in the record to indicate that the regularity of the levy was controverted in the county court, but the objections were, that it should have been at an earlier day, or on property of some of the defendants in execution, which was unembarrassed, or the liability of which did not promise to be a litigated question. It is difficult, if not impossible to say, from the recital of the facts upon this point, in the bill of exceptions, whether the levy was valid or not. As a general rule, what is necessary to an effective levy upon personal property, is laid down in many cases, some of which are cited by the counsel for the defendant in error. See also, 7 Ala. Rep. 619 ; 3 Rawle's Rep. 405-6. Now, although it may be in general essential to a levy, that the sheriff should have the chattels under his power or control, or at least within his view, and must in a reasonable time take them into possession, yet we apprehend that the execution of a forthcoming bond for property subject to seizure, would estop the party from controverting the regularity of the levy. So if, after having declared a levy upon property within his power or control, he commits its

custody to a third person as his agent, the levy perhaps would be good, though the custodian had abused his trust; for the sheriff having parted with the thing otherwise than the law requires, becomes himself liable for consequences. [8 Ala. Rep. 466.] We merely make these remarks to show the difficulty of considering the point understandingly, and even with propriety in the present condition of the cause; and therefore purposely waive it.

It was assumed in the circuit court, that the levy was made in a proper manner, and the question mainly mooted was, whether it was made in time to relieve the sheriff from the imputation of neglect, and to this inquiry we now address ourselves. In Hallett v. Lee and others, 3 Ala. Rep. 28, the sheriff retained the execution in his hands nearly five months without levying it, and then, about three weeks before the return day, levied it, and took a delivery bond, which was forfeited. Upon a motion against him for failing to make the money, which it was alledged could have been done with due diligence, it was held that the facts showed a clear case of neglect. In Powell v. The Governor, use, &c. 9 Ala. Rep. 36, it was held to be the duty of the sheriff to levy upon property of the defendant of probable value sufficient to satisfy the execution; but if he levies on lands which ought in the estimation of prudent individuals, to produce that amount, but does not, this furnishes no reason to charge the sheriff; unless actual injury has resulted to other parties from his mistake : *Further*, he exercises all the diligence required of him, when, after an unproductive sale of land so levied on he makes an immediate levy on other property of value sufficient to satisfy the execution, though not in time to sell before the return day : *Again*, a sheriff is not required to sell at the first sales-day after the execution is placed in his hands; but has the discretionary power to sell on any sales-day previous to the time appointed for its return. In respect to the first case cited, there can be no doubt but the facts were such as to establish negligence. The execution in that case was levied on personal property, which the defendant might, or might not, at his election, have produced on the day of sale, and the failure to do so would necessarily have prevented the making of the money before the execution had lost its

validity. In the last case, the sheriff had levied on land of greater value than the amount of the execution, at least in the estimation of prudent, calculating men, but when offered for sale, owing to causes beyond his control, it did not sell for enough to satisfy the execution. Upon this being ascertained, he did all he could to repair the failure to make the money, by re-levying upon personal property. There can be no doubt but these facts indicate reasonable diligence.

We have then seen that a sheriff is not bound to levy and sell under a *fieri facias*, immediately upon its coming to hand, but it is enough if he make the money by the return day of the execution. Here a levy was made in due season to have sold, on property proved to be worth double as much as the amount to be made on the *fi. fa.* supposing it to have been unembarrassed ; and even under the claim which Savory set up, a positive assurance was given that it should sell for enough to satisfy it. And here too, the defendant in execution was not authorized to replevy the property, so that it must have been forthcoming on the day of sale, unless some cause had intervened to prevent it, which the law does not contemplate. The possession of Savory after the levy was the sheriff's possession—the former being a mere bailee. True, as we have seen, the sheriff would have been answerable for the conversion of the property by his bailee, or for any other conduct which prevented the slaves from being present on the day of sale. But the faithlessness of Savory towards his bailor, cannot, in the present posture of the case be presumed. He did not arrest the sale in an irregular or illegal manner. It may be that his bill discovers no equity upon its face, or its allegations may be untrue ; yet the execution, so far as legal forms are concerned, has been duly stayed. The sheriff was bound to yield obedience to the injunction ; and under the circumstances, we think it furnishes a sufficient excuse for the failure to make the money.

The facts in this cause perhaps suggest other questions, some of which may be presented upon another trial ; but as they were not noticed in the court below, we decline their consideration. Other points are made, and were discussed at the bar, but as they will not probably arise upon a future trial,

or if they do, it cannot be necessary here to consider them, in order to guide the action of the county court, we will waive a special notice of them.

Let the judgment be reversed and the cause remanded.