## PATTERSON v. POWELL ET AL.

1. The estimated cash value of land, in the neighborhood in which it is situated, and in which it is to be sold, is a circumstance proper to go to the jury, to determine whether the levy was sufficient, or not. The sum for which the land actually sold, is not the only criterion of its value.

2. The sheriff is not responsible for postponing a sale of land, until it is too late to make another levy, and sale before the return day, if in good faith, and in the exercise of ordinary prudence, he was justified in supposing, the land would sell for a sum sufficient, to pay the executions in his hands. The rule it seems is otherwise, in the case of a levy on personal property.

Error to the Circuit Court of Coosa. Before the Hon. G. Goldthwaite.

THE plaintiff in error declared in debt against the defendants, as the securities of the sheriff of Coosa, for failing to make the money on an execution issued against Hobdy in his favor. The execution was issued on the 6th day of October, 1841, and on the 15th November was levied on the

Patterson v. Powell et al.

lands of the defendant.   The land was sold on the first Monday in March, 1842, for $303, and the proceeds applied to older executions, which had also been levied on the same land.   It was proved by the plaintiff, that during the time the execution was in the hands of the sheriff, the defendant in execution had personal property in his possession to the amount of $2,500.   The defendant proved that he had executions in his hands against Hobdy, in favor of different persons, to the amount of twelve or thirteen hundred dollars, and that the land levied on contained about 960 acres, lying in one body, of which were cleared from 100 to 150 acres, which was in cultivation, and from its location, character of the soil, and growth of timber, was worth from four to five dollars per acre, in cash.   The witnesses admitted that they had not known of the sale of any lands in the neighborhood for cash, and did not know what the land would sell for at sheriff's sale.   The plaintiff objected to this evidence, on the ground that it was not proper evidence to go to the jury, to show what the land would bring at sheriff's sale ; and on the ground that the sale of the land by the sheriff, was the best evidence of that fact.   The objection was overruled, and the plaintiff excepted.

The defendants then proved, that immediately after the sale of the land, the executions were levied on the slaves of the defendant, and which were of value sufficient to satisfy the several executions in his hands, and forthcoming bonds were given for their delivery on the first Monday in April, which was a week after the term of the court to which the executions were returnable.   The plaintiff objected to the proof of the additional levy, but the objection was overruled. The slaves were delivered on the day appointed, but the sheriff having died before that time, there was no person to receive them, and they were subsequently removed from the state.   The plaintiff proved, that there was a mortgage on the land of Hobdy, older than any of the judgments, on which was due $800, of which the sheriff had notice.   It was also shown, that the land was bid off by an agent of one Campbell, who was the brother of the sheriff, who controlled one of the executions, and that the sheriff said, that if Hobdy would do what was right, he would cause his brother to reconvey the land back to him.

The plaintiff requested the court to charge the jury, that if the land was incumbered by a mortgage of eight or nine hundred dollars, and Hobdy had in his possession personal property sufficient in value to satisfy the *fi. fa.*, in the hands of the sheriff, the sheriff was not justified in relying on the land to satisfy the executions, and delaying the sale until the first Monday in March, 1842.

2. That the actual amount the lands brought at sheriff's sale, was the highest evidence of the value of the land, and if the executions amounted to $1100, and the value of the land as ascertained by the sale, amounted to $303, then the defendants were liable. The court refused to give these charges, and the plaintiff excepted.

The plaintiff then requested the court to charge the jury, that if Hobdy was in possession of personal property, during all the time the execution was in the sheriff's hands, sufficient to satisfy it, and that the property was run off, soon after the return day of the execution, and no excuse whatever is shown for not selling the land in time to make a re-levy, in case the land proved insufficient to pay the execution, then the defendants are liable. This charge the court gave, but also instructed the jury, that they might look to all the evidence, to determine if the land was of value sufficient to induce an ordinarily prudent man to believe, that they would have sold at sheriff's sale for an amount sufficient to pay all the liens upon it, by mortgage or otherwise; and if they so believed from the evidence, they might regard this as a circumstance, to account for the sheriff's delay in not selling the land in time to make a re-levy; to which the plaintiff excepted.

The plaintiff also requested the court to charge, that if they believed, the sheriff delayed the sale of the land to favor or benefit Hobdy, the defendants were liable. This charge the court also gave, but at the same time instructed the jury, that if they believed that the delay in selling the land, resulted from a belief that it was of value sufficient to satisfy all the liens upon it, and would bring at sheriff's sale a sum sufficient for this purpose—and if they also believed the land to be of sufficient value to authorize a man of ordinary prudence to come to that conclusion, then on this point

they should find for the defendants; to which plaintiffs excepted.

The refusals to charge as asked, and the charges given, are now assigned as error.

MORRIS, for plaintiff in error.

1. The evidence of the witnesses in relation to the value of the land, should have been excluded; they expressly say, they do not know the value of the land at sheriff's sale. This has heretofore been settled as improper evidence in this very case. See Governor, use, &c. v. Powell et al. 9 Ala. 83.

2. The return of the sheriff shows, that the land was actually put up at sheriff's sale, and sold for $303. This sale is a demonstration of the value of the land at sheriff's sale. To say that the opinion of witnesses can outweigh this grade of testimony, is too absurd to be tolerated. This fact established, the sheriff is liable, having at the time liens in his hands to the amount of $900 or $1,000. This point is also raised in the second charge. See this question decided in Griffin v. Gannaway, 8 Ala. 625.

3. The additional levy should have been excluded. How can a sheriff protect himself by a levy a few days before the return term of the writ? See Hallet v. Lee et al. 3 Ala. 28.

4. The opinion in this case, 9 Ala. 36, was on a state of facts unlike the present; the mortgage on the land .was not brought to light on that trial. Now it is in evidence, and presents the question under the circumstances, whether a sheriff can rely on incumbered land, (there being personal property amply sufficient,) for his protection, to the damage and injury of the plaintiff. It is insisted he cannot. The only safe rule is, that the sheriff must, in the absence of a good excuse, sell in time to make a re-levy, should the first prove insufficient. Here the testimony shows, that no excuse whatever existed for the delay.

L. E. PARSONS, contra.—1. The rule of evidence in this case has been already laid down, (9 Ala. 83,) and the court below followed it. The value of the land in cash was the only rule by which the sheriff could determine what it would

bring at sheriff's sale.   There were 960 acres of land, worth
in cash from four to five dollars—$4,080; mortgage incum-
brance $800, executions $950—$1,750.   Was it not reason-
able to suppose this land, lying in a body, improved and well
timbered and watered, would bring at sheriff's sale this
amount ?

2.  The second levy was properly admitted in evidence, be-
cause it directly rebutted the idea that the sheriff had any
intention of favoring Hobdy at the expense of the creditors.
It is important to observe that he made this levy forthwith,
on finding the land did not bring enough, and that the last
levy was on enough of Hobdy's property to satisfy all the ex-
ecutions.   Does not this, then, show a disposition to dis-
charge his duties in good faith ?

3.  The sheriff could not foresee what the land would sell
for.   He could only exercise his best judgment.   Why then
should his sureties be estopped by the sale at $303, to show
that the land was really worth in cash a sum which would
afford reasonable grounds for supposing the money would be
made by a sale of it.

4.  The offer to prove what Graham said when the property
last levied on was brought up for sale, after the sheriff was
dead and buried, was certainly not admissible.   It was the
declaration of a third party, in the absence of all the parties
to this suit.

5.  The charges given and the qualifications are in the ex-
act language of the opinion on this branch of the case in 9
Ala. 83.   The decision at January term, 1848, was on the
fraud part of the case.   This was abandoned on the last trial.

DARGAN, J.—It is the duty of a sheriff, *in good faith* to
execute all process that comes to his hands, and in the exer-
cise of the powers conferred on him for this purpose, he
should observe a due regard to the interest of both plaintiff
and defendant.   If he make an insufficient levy, when the
defendant had property sufficient to pay the debt, and thereby
fails to make the money according to the mandate of the
writ, he is responsible to the plaintiff.   If he make an exces-
sive levy, to the injury of the defendant, he is responsible to

him. In determining, therefore, whether the levy is sufficient, or not, he must exercise a sound, and prudent discretion, and the estimated cash value of the property, in the neighborhood where it is situated, and where it is to be sold, is necessarily a circumstance, which he must consider, in determining whether the levy is sufficient or not.

If it so turn out, that the property, although of sufficient value to pay the debt, remains in his hands unsold for the want of buyers, and if by his return he shows these facts, if he has honestly endeavored to *sell it*, he cannot be made responsible because no one will buy. If the property is fairly sold, and brings much less than a man of prudent judgment would have supposed to be its cash value, and what it should have brought at cash sale, the sheriff is not responsible, if he has exercised honesty, and good faith in the transaction. We all know that property at sheriff sale sometimes brings its full value—sometimes, *it is sold* at a great sacrifice; whether it will bring its value, *or near it*, or whether it will be sold for less than one half its value, it is impossible for the sheriff always to foresee; consequently, it would be unjust, and unreasonable, when he is sought to be charged for an insufficient levy, to confine the evidence of the value of the property, to the amount produced at the sale. This view we think is sustained by the case of Powell v. The Governor, use, &c. 9 Ala. 36, and shows that the court did not err, in admitting the evidence objected to, and which tended to show the value of the land in cash.

2. The evidence showed, that the land was mortgaged for about eight or nine hundred dollars. The executions levied on it, amounted to twelve or thirteen hundred. The land was sold incumbered with the mortgage, for $303. The testimony, apart from the sale, showed the cash value to be about $4,000; the sale took place, the first Monday in March. The term to which the execution was returnable, commenced the last Monday; consequently, the sheriff could not levy on and sell slaves after the sale of the land, before the return day of the writ. But immediately after the sale, slaves were levied on, and a forthcoming bond taken for their delivery, on the first Monday in April. The instructions given by the court to the jury on this evidence is, that if the

jury believed from the whole evidence, that the delay in selling the land, until it was too late to levy on and sell slaves, before the return of the execution, resulted from a belief, that the land was of value sufficient to pay all the liens on it, and satisfy all the executions, and would bring at sheriff's sale an amount sufficient for that purpose, and if they further believed, the land to be of sufficient value to authorize a man of ordinary prudence to come to that conclusion, then they should find for the defendants. ·We think these instructions are fully justified, by the cases of The Governor, &c. v. Powell, which grew out of the levy and sale of the same lands, and also by the case of Powell v. The Governor, &c., both of which are reported in 9 Ala. 36, 83. Both those decisions hold, that the sheriff was not responsible for postponing the sale of the land, until the last sale day. It was done under a well founded belief, that the land would sell for enough to satisfy all liens upon it, notwithstanding the incumbrance *on it, by way of mortgage.* They likewise hold, that the sheriff was not responsible for not making an additional levy, previous to the sale of the land, if he declined to do so under the same ·belief. ·

These decisions are decisive to show, that there was no error in this charge. It may be proper however, to add, that we are not inclined to go further, than the decisions referred to require. A sheriff levying on land, incumbered with a mortgage, instead of unincumbered property, if it do not sell for enough to satisfy the debt, must show, that men of good judgment estimated the value of the land for cash, at a sum sufficient to pay the execution, notwithstanding the mortgage, or incumbrance, and that he acted under the impression, that the land at sheriff sale, would bring enough for this purpose. If the evidence does not acquit him of negligence, and also show that he acted in good faith, under the impression that the land, notwithstanding the incumbrance, would bring enough to satisfy the plaintiff's demand, he would be liable.

It is supposed that the case of Hallet v. Lee, 3 Ala. 28, is opposed to the cases referred to in 9 Ala. But they are distinguishable. The levy in that case was on slaves; a forthcoming bond was given, and the sale postponed, until the

last sale day, before the return day of the writ. As the defendant had given a forthcoming bond, whether the sale would take place or not, depended *on his will.* If he saw proper to deliver the property on the day of sale, the sheriff could sell; but it was at the option of the defendant in execution, whether a sale took place or not. This was negligence, as the sheriff could have appointed an earlier day for the sale, and if the property had not been delivered, the bond could have been returned forfeited, an execution issued on the bond, and a sale had, before the term of the court to which the writ was returnable. But in the case at bar, as well as in the cases referred to in 9 Ala., the levy was *on land,* and the sheriff had the right to sell, and did sell, on the day appointed, and no act of the defendant could have prevented the sale, unless he had paid the money.

There is no error in the ruling of the court, and the judgment is affirmed.