## CAWTHORN v. McCRAW.

1. Where a guardian purchases property at a sale under an execution in favor of his ward, which he pays for by causing a credit to be entered on the execution, it seems that the ward may elect to have the property or the money with interest. But to induce a court of equity to make the guardian a trustee for his ward, the former must have purchased under such circumstances as invests the guardian with a valid estate at law; if *mala fides* is attributable to him, his purchase is void by the statute of frauds, against the creditors of the defendant in execution, and will not be upheld in equity, merely to declare a trust in favor of the ward.

2. *Semble.* To make a valid levy on personal property, the sheriff must have the property within his power and control, or at least within his view; unless the defendant acknowledges a levy by executing a delivery bond.

3. The sale of slaves under execution, at a time and place other than that prescribed by the statute, by the consent of the plaintiff and defendant, is not void, if there was no intention to defraud, and no other lien on the property at the time of sale.

4. Although a fraudulent purchase by the guardian, at a sale under execution, in favor of his ward, is void as against the creditors of the defendant in execution, yet a court of equity would uphold the pre-existing lien of the execution in favor of the ward, direct a resale of the property, and satisfaction to be made, before execution creditors whose liens subsequently attached would be entitled to the proceeds.

Writ of Error to the Circuit Court of Perry.

THIS was a proceeding under the statute for the trial of the right of property. The plaintiff in error having recovered a judgment against James C. Harrell, William B. Benson, and Henry Y. Howze, for $5,216 64, a writ of *fieri facias* was issued thereon, and levied by the sheriff of Perry on sundry slaves ; a claim of property was interposed by the defendant in error, and bond executed for the trial of the right. An issue being made up, the cause was submitted to a jury, who returned a verdict for the claimant, and judgment was rendered accordingly. On the trial, the plaintiff excepted to the ruling of the court. The case made by the bill of exceptions may be thus stated, viz : the plaintiff adduced the execution, and proved that it was levied on the slaves in question as the property of Benson, and that at the time of the levy, and for some time previously, they were in the possession of the latter ; and also proved the value of the slaves, severally. The claimant then, in order to show that the slaves were not liable to the plaintiff's execution, produced seven writs of *fieri facias,* issued from the County Court of Perry, on the 22d August, 1843, for the sum of $1191 73, each, against Benson ; five of which *fi. fa's* were in favor of the claimant, as guardian of certain infant heirs of Willis W. Benson, deceased ; another was in favor of Eliza R. Plummer, who was a sister and heir of the decedent ; and the other was in favor of Anderson Cain in right of his wife, who was also shown to be a sister and heir of the decedent. The two last described *fi. fa's.* were, on the day they were issued, transferred by the plaintiffs therein to the claimant, by assignment in writing indorsed on each one of them. These seven exetions all came to the hands of the sheriff on the day they bear date, and were levied *upon all the property of the defendant therein,* including the slaves in question. The slaves at the request of the defendant, Benson, were advertised for sale, at Perryville, in Perry county, and were there sold accordingly, on the .... day of September, 1843 ; at the sale the claimant bid off all the slaves in his own name, and received for the same a bill of sale from the sheriff dated the 20th November, 1843. It was shown that no money was paid, but

the claimant merely credited the execution with the amount of his purchases. *Further*, that it was announced by the sheriff, under the direction of the claimant, that specie would be demanded of the purchasers of the slaves, and they were sold at low prices.

It was also proved that the seven executions, under which the claimant purchased, were placed in the hands of the sheriff by the claimant, at the seat of justice of the county; that the defendant, Benson, was at the court house on the same day, and furnished the sheriff with a schedule of all his property, and requested him to levy on it. *Further*, that although the slaves in question were bid off by the claimant, they returned to the possession of Benson, and have there continued ever since.

There was evidence tending to show that Benson held the slaves as the agent of the claimant. And there was also proof that the claimant attempted to prevent competition in bidding at the sale.

On the day succeeding the sale of the slaves, the sheriff sold, at Benson's residence, his crop of corn and cotton then in the field, his stock of horses, cattle and hogs, and also all his other personal property; the whole of which was purchased by the claimant, and continued thereafter to remain in Benson's possession. On the first Monday of November, 1843, the tract of land on which Benson lived was sold by the sheriff, at the court house, bid off by the claimant as the other property was, and the possession remained unchanged. The defendant, Benson, was a son-in-law of the claimant, and the wards of the latter were the brothers and sisters of Benson.

It was further proved, that after the sale of the crop of cotton, by the sheriff, eight bags were packed and marked in the name of the defendant, Benson. In addition, it is said that other evidence was adduced, tending to show that the sale and purchase of the slaves was fraudulent, and a device of the claimant and Benson to secure the latter in possession of them; and to hinder and delay his creditors in the collection of their debts.

The court instructed the jury, that it was not alledged, or

66

pretended, on either side, that the conduct of the sheriff who sold the slaves in controversy, and the other property, was other than fair and honest; that the wards of Abner McCraw, for whose benefit, and on whose account, the executions under which he purchased issued, had a right to the slaves and other property purchased by him with the executions, if the sale was fair as respected other creditors, whether purchased by him for them or not, if they chose to elect to have the same. If the slaves and other property purchased by Mc-Craw, under the executions, were purchased by him for his wards, then McCraw was entitled to a verdict in this case, whether the purchase was made fraudulently as respected other creditors or not. And whether the purchase of the slaves by McCraw, under the executions, was fraudulent or not, as respected other creditors, could not be inquired into in this court; that a Court of Chancery alone had jurisdiction to make the inquiry, and that the title of M'Craw could not be attacked in a court of law.

J. Erwin, H. Davis, and A. Graham, (of Perry,) for the plaintiff in error, contended, that though in the execution of a *fi. fa.* a sheriff may act with fairness, yet if the plaintiff acts fraudulently, with the view of becoming a purchaser of property to be sold under it, if he purchases pursuant to such design, his title may be defeated by a *bona fide* creditor of the defendant in execution. [21 Wend. Rep. 169.] Infants, whose acts are tainted with fraud, or who claim interest through others as their guardians, which the latter have acquired by fraudulent devices, can derive no advantage under such circumstances, that would not be accorded to persons of full age. [Roberts on Frauds, 520-1-2.]

T. Chilton and A. B. Moore, for the defendant in error. It does not appear that the attempt of the claimant to put down competition at the sale of the sheriff, was successful; consequently the title he acquired cannot be prejudiced. [Haynes v. Crutchfield, 7 Ala. Rep. 189.] The record does not show, that the claimant, in consequence of any unfair practices, purchased at an under value.

Fraud cannot be inferred from the fact that the defendant,

Benson, still retained possession of the property. He was the son-in-law of the claimant, and it was reasonable and natural that the latter should be willing to make him his agent; the more especially when, by so doing, he would be providing a home for his own daughter.

But if the fraudulent purpose of the claimant was conceded, then it is contended that the slaves could not be subjected to the payment of his debts. He used the funds of his wards, and they thus acquired an interest in the property purchased, of which a court of law could not deprive them. [2 Sugd. on Vend. 173; Sand. on Uses, &c. 219; 2 Kent's Com. 229; 2 Vern. Rep. 166.]

If the claimant purchased fraudulently with his own funds, the fraud could not be inquired into on the trial of the right of property. The party complaining of the fraud should have moved to set aside the execution and sale; or if he was not in a condition to do this, he could apply to a Court of Chancery; and if the sale should be set aside, either on motion or upon bill filed, it would be upon such terms as would protect the purchaser, by causing his money to be refunded. [9 Porter's Rep. 679.]

It does not appear that the debt upon which the plaintiff recovered a judgment, was contracted at the time the slaves were sold by the sheriff, or that Benson was indebted to any one else at that time, than the claimant and his wards; unless this was shown, it cannot be presumed that he intended to defraud his creditors, or that the claimant lent himself to such a purpose.

COLLIER, C. J.—The material question in the case is this, can personal property which has been sold under execution at the suit of infant wards, by their guardian, where the levy and consequent proceedings indicate the purpose of the guardian, (who became the purchaser at the sale,) and the defendant in execution, to defraud the creditors of the latter, be levied on in the hands of the same defendant, and sold under an execution issued on a judgment subsequently obtained against him?

By the second section of the statute of frauds, it is among other things enacted, that "every bond, suit, judgment, or

execution, had or made and contrived, of malice, fraud, covin, collusion or guile, to the intent or purpose to delay, hinder or defraud creditors of their just and lawful actions, suits, debts, accounts, damages, penalties or forfeitures," &c. "shall be from henceforth deemed and taken only as against the person or persons, his, her or their heirs, successors, executors, administrators, or assigns, and every of them, whose debts, suits, demands, estates, interests, by such guileful and covinous devices and practices as is aforesaid, shall or might be in any wise disturbed, hindered, delayed or defrauded, to be clearly and utterly void ; any pretence, color, feigned consideration, expressing of use, or any other matter or thing to the contrary notwithstadding." [Clay's Dig. 254, § 2.]

In Gardenier v. Tubbs, et al. 21 Wend. Rep. 169, it was held, that where property is bought at a sheriff's sale, by the plaintiff in an execution, and left in the possession of the defendant, without any good excuse shown, the sale is void as against other creditors of the defendant, notwithstanding the plaintiff subsequently and before the levying of an execution on the part of other creditors, reduce the property to his actual possession. This case is more stringent than the English adjudications upon the same point. In that of the earliest date, which has come under our notice, it was determined, that where the goods of A are sold under a *fi. fa.* to B, *bona fide*, and for a valuable consideration, and the latter permit A to remain in possession, on condition that he will deliver over to him the product from the sale of the goods, the possession will not render the execution fraudulent ; and on a subsequent bankruptcy, the goods will not pass to the assignees of A. [Cole v. Davis, 1 Lord Raym. Rep. 724.] So where K, (not being a creditor,) bought the goods of A, at a public sale by the sheriff under a *fi. fa.* and afterwards allowed A to remain in possession, and the latter afterwards made a bill of sale of the goods to R, who took them into possession ; upon action brought by K against R, the jury negatived any fraudulent intention on the part of K, and the court maintained his right to recover. [Kidd v. Rawlinson, 2 Bos, & P. Rep. 59.] It has also been decided, that where the goods of a debtor who had confessed a judgment were taken in execution, and purchased at public auction by the plaintiff,

who let to the debtor, for rent actually paid, his purchase cannot be defeated for fraud. [Watkins v. Birch, 4 Taunt. Rep. 823; see also, Brandon v. Snow & Cunningham, 2 Stew. Rep. 255.] We have cited these cases, not so much for their importance in the condition in which the record comes before us, but as furnishing principles to guide the judgment of the court, in the ulterior progress of the cause.

There can be no question of the rule stated at the bar, that the guardian's trust is one of obligation and duty, and not of speculation and profit. He can derive no benefit from the use of the ward's money, and if he employ it in the purchase of property, the ward may elect to have the property, or the money with interest; and a court of equity will, in a proper case, make the guardian a trustee for his ward, in respect to property thus purchased. But this will only be done, where the purchase is made under such circumstances as invest the guardian with a valid estate at law. If *mala fides* is attributable to him, so that the sale under execution passes no title as against the creditors of the defendant, equity cannot consistently with its own principles, uphold it, merely for the purpose of declaring a trust in favor of infants. Such a course of procedure would be exceedingly unjust to the creditors who were prejudiced by the fraud, and directly violative of the provision of the statute of frauds which we have cited.

The question of fraud *vel non*, where its solution depends upon evidence, addresses itself to the consideration of a jury, and if found affirmatively, it is the duty of the court to declare all transactions arising out of, or tainted with it, inoperative and void; and this whether reference be had for the rule of decision to the common law or a statute. [2 Starkie's Ev. 586; see the cases cited in Walker, Giller & Mabry v. Herndon, at this term.] It cannot be questioned that the bill of exceptions recites such a state of facts, as warranted the plaintiff in praying the charge of the court, touching the good faith of the claimant and the defendant in execution, in the several transactions which were drawn in question; and the view we have taken of the law may suffice to show, that fraud would be utterly destructive of the title set up by the claimant.

The fact that the levy of the execution was made on the slaves, when they were not present and under the control of the sheriff, and that they were afterwards sold elsewhere than at the court house, is not, under the facts of the case, conclusive evidence of fraud.   It may be conceded, that in order to make a valid levy on personal property, the sheriff must have it within his power and control, or at least within his view, unless the defendant acknowledges a levy by executing a delivery bond.   [Cobb v. Cage, 7 Ala. Rep. 619; see also, ·16 Johns. Rep. 287 ; 14 Wend. Rep. 123 ; 3 Wend. Rep. 446 ; 2 South..Rep. 479 ; 11 Wend. Rep. 548 ; 14 Johns. Rep. 222 and 352.]   The property in the present case, was forthcoming on the  day  of sale, and though sold at a place which the statute does not prescribe, the circumstances could not, if there was no intention to defraud, defeat the purchase. It does not appear that  there were any liens upon the property of the defendant in execution ; assuming such to be the fact, and it would.have been competent for the defendant to have made a private sale to the claimant or any one else.   If he could thus have sold his property, it is difficult to conceive of any objection to his making a public sale, either personally or through the agency of another.

Assuming the sale to have been fraudulent as it respects the defendant in execution and the claimant, will the infant wards of  the claimant lose  the priority  to which the executions in their favor are entitled?    The fraud of  the guardian, while it cannot transmit, will not be allowed to defeat the rights of his ward.    If the claimant's purchase should be found fraudulent, it must be adjudged invalid at law ; but the plaintiffs in the executions, who were his wards, might assert their pre-existing lien in a court of equity, and would be preferred, if their judgments and  executions were regular up  to the time of the levies and sales ; if not  for the  full  amount thereof, at least to the  extent of the sums at which the property was bid off.    That court would direct a re-sale  of the property, and after paying what the wards of  the claimant were  entitled to,  would  then  order  the  execution  of  the plaintiff to be satisfied.    We have thought it  proper  to  say

thus much, that the rights of the parties may be adjusted without again resorting to this court.

We have only to add, that the judgment of the Circuit Court is reversed, and the cause remanded.