## O'NEAL et al. vs. WILSON.

1. When an execution is levied on a slave which is under mortgage or deed of trust executed by the defendant in execution, the sheriff has no authority to sell a greater interest than the defendant in execution has, viz: the right of possession until the law day of the mortgage or deed of trust, and the equity of redemption.

2. The execution creditor has the right, under the statute, to pay off the debts secured by the deed of trust, and to be substituted to the rights of the beneficiaries; and in such case the trustee would be compelled to execute the trust for him in the same manner. But if the sheriff assumes the responsibility of closing the trust, by selling the entire property in the slave, and declaring that the proceeds of sale will be applied first to the payment of the debts secured by the deed, and the surplus to the satisfaction of the execution, his sale does not divest the title of the trustee, but only transfers to the purchaser the interest of the defendant in execution.

3. The doctrine of "*caveat emptor*" applies to sales under execution, where the sheriff attempts to sell a greater interest than the defendant has; and although a court of equity will sometimes interfere in peculiar cases, to prevent fraud, or relieve against mistakes, yet it will not interpose to relieve a purchaser from the consequences of his own folly or temerity, when he purchased with

knowledge that the property was under deed of trust, and after the sale had been forbidden by the trustee.

ERROR to the Chancery Court of Pickens.

Tried before the Hon. W. W. MASON.

This was a bill filed by the defendant in error, Wilson, against William H. O'Neal, Robt. I. Johnson, John M. Sprowl and Jesse W. Bryan, and charged that, on the 23d of October, 1849, Sprowl recovered a judgment against O'Neal for $160\frac{13}{100}$ and $8\frac{62}{100}$ cost, in the Circuit Court of Pickens, on which *fi. fa.* issued the 6th of November, 1849, and was, on the 2d of January, 1850, levied by Bryan, sheriff of Pickens county, on a negro girl, Matilda, and a buggy, as the property of O'Neal; that O'Neal had, before the levy, to-wit, on the 5th of April, 1849, executed a deed of trust to Johnson, trustee of said property, to secure certain debts set forth in the deed, a copy of which is exhibited; that said sheriff, on the 1st Monday in February, 1850, offered said slave, Matilda, for sale under said levy, "with a notice, declaration and understanding, that the proceeds of the said sale should be applied to the satisfaction of the said trust deed, if sufficient; and the surplus, if any, should be applied to the satisfaction of the writ of *fieri facias;*" that the trustee was present, and offered no objection to such application of the funds on the part of the sheriff; that plaintiff in execution was one of the bidders at the sale, with a knowledge of the proposed appropriation of the proceeds, and offered no objection; that being satisfied with the declarations of the sheriff, and concurrence therein by the trustee, through his attorney, and by the plaintiff in execution, and believing that the same would be duly carried out according to the true intent and understanding thereof, complainant purchased said property at said sale, bidding the sum of four hundred and five dollars, that being as much as she would have sold for under any circumstances; that after the sale O'Neal forbid the sheriff to satisfy the deed with the proceeds of the sale, and insisted that the funds arising from the sale should be applied to the satisfaction of the execution, and the residue paid to himself; that complainant, after the sale, took the slave into his possession, and hired her to one

Ward; that Johnson had brought his action for her against Ward, to the Circuit Court of Pickens, to the April term, 1850, which was still pending, and if the trustee succeeds complainant will lose the title and possession of said slave; that after suit was commenced he offered to rescind the contract, to give back the negro and receive his money, but the said O'Neal refused; that complainant moved the Circuit Court at its April term, 1850, to set aside the sale on the ground of mistake, but O'Neal objected, and the court refused to entertain the motion, holding, complainant had a remedy alone in equity.

The bill prays an injunction against Johnson's suit against Ward, against Bryant's paying the purchase money to the *fi. fa.* of Sprowl, and prays that the sale be set aside, and the purchase money be refunded.

O'Neal answers, and denies that complainant purchased under any sale made by either his or the trustee's acquiescence; on the contrary, he says the attorney for the trustee read the trust deed and forbid the sale.

Johnson, in like manner, denies that any consent was given by himself in any way to the sale by the sheriff, or to the application of the proceeds of the sale, as stated in the bill.

A decree *pro confesso* was taken as to the other defendants.

James B. Sherrod, a witness examined by the plaintiff below, states, that he was present at the sheriff's sale; that the sheriff then made proclamation that the slave would be sold under the execution, but that the proceeds would be first applied to the payment of debts secured by the trust deed, and the surplus, if any, would be applied to the execution. He was near the sheriff, and heard no objection to such proposed disposition of the proceeds. That Matthew Lyon was present, and represented himself as the agent of Johnson, the trustee, and forbade the sale; but don't remember his precise words.

William G. Mustin, witness for the defend ant, says, he was present and heard the same declaration by the sheriff deposed to by Sherrod; heard Lyon read something to the crowd, but does not remember what it was; heard the sheriff say said slave was under a deed of trust, but does not remember the parties; does not recollect whether Lyon forbid the sale or not; says the slave was worth, when sold by the sheriff, three

O'Neal et al. v. Wilson.

hundred dollars, and that her hire from the 15th of January, 1850, to the 15th of July, 1851, was worth sixty dollars.

Doctor Wilkins, examined by defendant, testifies that the slave had a disease which lessened her value 15 per cent.

Noel J. Smith states, the slave, at the time of the sheriff's sale, was worth $550, and her hire he estimates at $8 per month; heard O'Neal tell the sheriff the day before he levied that the property was subject to a deed of trust, and that if he seized it he would be sued.

W. C. Ferguson owned the slave, and sold her to O'Neal; thinks her worth $600 at the time of the sheriff's sale, and her hire for sixteen months worth $125.

Matthew Lyon testifies, that he was present at the sale of the slave by the sheriff, and at the instance of Johnson, the trustee, forbid the sale positively, and read the trust deed to the crowd assembled to bid, and that he did not acquiesce in the declaration made by the sheriff as to what would be done with the money; that O'Neal proposed to complainant, through this witness, if he would place him, O'Neal, in *statu quo* as to the slave and a buggy levied on at the same, and which the witnesses prove was damaged before the sale, while in the sheriff's custody, he would amicably arrange the matter; that he did not object to the sheriff's declaration as to how he would apply the money, further than to forbid the sale.

It was admitted, the Chancellor says in his decree, by the parties, that at the Spring term of the Pickens Circuit Court the complainant in the bill obtained an order setting aside the sale of the slave. The Chancellor decreed, that the action of detinue brought by the trustee, Johnson, against Ward for the slave, be perpetually enjoined; that Bryan, the sheriff, refund to the complainant the purchase money ; that the slave be delivered up to the trustee without prejudice to his right to recover hire, and that the defendant, O'Neal, pay the cost of the suit.

To reverse this decree, the defendants bring the case to this court, and assign several errors in it.

BLISS & BALDWIN, for plaintiffs in error:

The bill is without equity. The Circuit Court had power

to do full justice in the premises. Mobile Cotton Press v. Moore & McGee, 9 Porter, 679.

The decree is clearly erroneous, in perpetuating the injunction against the suit at law. At the time of the filing of the bill, O'Neal had a right to bring his action, or Johnson had.

It cannot be contended, that either Johnson or his attorney had a right to permit the sheriff to sell the negro, without the consent of O'Neal. Certainly, the silence of the attorney, after he had forbidden the sale, did not give that right; nor could the attorney have given such assent, even if authorized by the trustee, who swears that he did not authorize him. Sugden on Powers, 4 Ed., 177.

If, however, this silence was sufficient authority to the sheriff to sell, there was no necessity for this bill; the complainant could have defended at law.

If the sale was not sufficient to pass the title, but was unauthorized, then it was erroneous to perpetuate the injunction, even if the sale ought to be set aside. We were entitled to the negro, and in the form in which we sought to recover it. Besides, we were also entitled to the hire, and to the costs at law. We are enjoined from proceeding at law, and yet without prejudice to our recovery of hire. How are we to get the hire? Ward, the defendant, has left the country; so that we cannot get judgment at all, unless in this suit. The admission of the right to hire, is an admission of the right to sue for it.

The contract being rescinded, each party should be placed in *statu quo;* the complainant should have been decreed to pay hire, or, at least, we should have had liberty to prosecute the suit for that purpose.

The defendant being himself in fault, and the sheriff being the party who did the illegal act, and O'Nneal having committed no fault whatever, the costs should have been decreed against the sheriff or the complainant.

The defendant, Ward, should have been made a party to the bill. The decree concludes us as to him, but does not bind him.

The complainant purchased the negro, with full knowledge of every fact which could apprize him of the nature and cha-

O'Neal et al. v. Wilson.

acter of the title that he was buying. It must be supposed, that he only bought what the sheriff had the legal right to sell, viz: the equity of redemption.

E. W. PECK, *contra :*

1. The bill in this case is not without equity; although courts of law may grant relief, by setting aside sales made under process issued by them, yet this does not interfere with the jurisdiction of the Chancellor, that he has, in such cases, independent of the courts of common law. In many cases the Chancellor only can give full relief; and such is this case. Here the court at law could only set aside the sale, but could not enjoin the suit by the trustee, or settle the other equities that had arisen between the parties.

2. There is no substantial objection to the decree. The Chancellor might, perhaps, have permitted the suit by the trustee to go on, to recover damages for the services of the slave only. This, however, he was not bound to do, because, under the circumstances, there was a violation of equity in commencing the suit, and he might well enjoin it altogether, saving to the trustee the right to recover the value of the services of the slave, in an action for that purpose only, in the event the complainant should refuse to pay for them.

3. The fourth assignment cannot be sustained, first, because it is not sustained by the record; and secondly, because no objection, for want of parties, was made in the court below.

4. The fifth assignment stands upon no better ground. By filing an answer, and going to a hearing, the defendant, Oneal, waived the demurrer that he had previously filed; besides, the defendant had the benefit of the demurrer, by the motion to dismiss for want of equity, the demurrer being a mere general demurrer.

CHILTON, J.—It will be very apparent, from the facts of this case, which I have drawn out at length, that the complainant below cannot have the relief prayed by him.

In the first place, the sheriff had no authority to sell a greater interest in the slave than O'Neal had. He had the possession and the right of possession until the 1st day of March, 1850, the law day in the deed of trust. Instead, how-

ever, of selling the equity of O'Neal, he sold the entire property, declaring that he would apply the proceeds, first, to the satisfaction of the trust, and the overplus upon the execution. He had no power thus to put himself in the place of the trustee. The creditor who has execution against the mortgagor or maker of the trust deed, has the right, under the statute, to pay off the debts secured by the trust, and thus to be placed in the situation of, or substituted to the rights secured to, the beneficiaries under it. And in such event, the trustee would be compelled to execute the trust for him in the same manner, thus tacking, as it were, his execution debt to the trust deed. Baylor v. Scott, 2 Por. 315, 322. Such was not the course pursued in this case. The sheriff assumed the responsibility of closing the trust, which he had no power to do, and the sale by him passed nothing but the unexpired term in the slave to which O'Neal was entitled, together with the equity of redemption. In other words, it transferred to the purchaser, Wilson, all the interest which O'Neal had in the slave. 8 Ala. 706; 5 Por. 182; 2 Ala. 314; 18 ib. 753, 758. It is clear, then, the sale did not divest the title of Johnson, the trustee.

Again, it is clear that Wilson purchased in his own wrong, with a full knowledge of the trust, and after the sale had been forbidden by the attorney for the trustee. Having forbidden the sale, the agent of the trustee was under no obligation to make any response to the sheriff's declaration as to the manner he intended to dispose of the proceeds. He read the trust deed, and forbid the sale. If, after this, the sheriff proceeded to sell, and Wilson to purchase, the entire property, they did so at their peril, and can claim no aid from a court of equity to relieve them from the consequences of their own folly and temerity. The doctrine, *caveat emptor*, applies to such sales; and although the court will sometimes interfere in peculiar cases, to prevent fraud, or to relieve against mistakes, this is not one of those cases.

The plaintiff below entirely failed to show, that he was misled by any act of either O'Neal or Johnson, the trustee; and if the declaration of the sheriff as to his intended application of the funds misled him, this was his misfortune in not understanding the powers and duties of the sheriff, and not

the fault of O'Neal or Johnson. It is said, the common law court has set aside the sale made improperly by its officer. This, we apprehend, was done, upon the tender of the slave back, or offer to return her; and the court which cancels the sale, the money being in the hands of its executive officer, has doubtless ordered it to be refunded to the party who paid it, if it has been paid. We say, if it has been paid, for it is worthy of remark, that there is no direct allegation in the bill that it was paid, nor any proof of the fact. We can only arrive at it inferentially, from the charge, that O'Neal refused to permit the sheriff to apply it to the purposes of the trust.

The trustee, as we have shown, had a good cause of action, not only to recover the slave, but her hire from the time he became entitled to her under the trust deed. He is not in any wise estopped, by any conduct of his agent on the day of sale by the sheriff, from asserting that title, and there is no reason whatever shown for enjoining his suit, unless, indeed, the slave has been returned; and this would constitute no valid objection to its maintenance for the hire. Besides, the return is a good answer in the common law court to a judgment for the property. The suit was, therefore, improperly enjoined. Indeed, the whole case made by the record shows, that the complainant has come into court to be relieved against his own rashness, in buying an interest in property which the sheriff could not convey, and which he was positively forbidden to sell. There was no deception practiced upon him; no want of knowledge in regard to the facts; and if, reposing upon his own or the sheriff's knowledge of the law, as to the power of the latter to sell as he did, Wilson ventured to purchase, he has no standing in a court of equity, and must take the consequences. Were courts of equity open for such complaints, there would be no end of applications to set aside improvident purchases, made, it may be, to speculate upon the chances of success. We do not say that such was the fact here; for it is but charitable to suppose Wilson was ignorant of the law, and for that reason made the purchase. While, however, we may indulge this supposition, to exonerate him from any intended violation of the rights of others, the law will not indulge the presumption to afford him relief.

Let the decree be reversed, and here rendered, dismissing

the bill; and let the defendant in error be taxed with the cost
of this court and the court below.