## McCONEGHY *vs.* McCAW.

[TROVER BY FEME COVERT FOR CONVERSION OF SLAVE.]

1. *Sale of mortgaged property under execution against mortgagor.*—Under section 2455 of the Code, the interest of one who has conveyed a slave, by bill of sale absolute on its face, as a mere security for the payment of a debt, may be sold under execution against him; and the sheriff must, of necessity, have the right to take the slave into his possession.

2. *Sheriff's liability in trover for abuse of lawful authority.*—If a sheriff sells the entire property in a slave, under execution against the mortgagor, he is liable in trover at the suit of the mortgagee; and the plaintiff in execution, who indemnified the sheriff to make the sale, and who received the entire purchase-money, is equally liable.

3. *When wife may sue alone.*—The wife may maintain trover in her own name, without joining her husband, for the conversion of a slave which she claims as part of her separate estate under the "woman's law" of 1850.

APPEAL from the City Court of Mobile.

Tried before the Hon. ALEX. McKINSTRY.

THIS action was brought by Mrs. Martha E. McConeghy, wife of William McConeghy, against Hugh McCaw, to recover damages for the conversion of a slave named Dick, which the plaintiff claimed as a part of her separate estate, under the facts hereinafter stated, and which the defendant induced the sheriff of Mobile to sell under execution against said William McConeghy. A plea in abatement, on account of the non-joinder of the plaintiff's husband, was interposed by the defendant, but does not appear to have been acted on by the court; and the cause was tried on issue joined on the plea of not guilty.

It appeared from the evidence adduced on the trial, as the same is stated in the bill of exceptions taken by the plaintiff, that the plaintiff and her said husband were married in May, 1849; that the slave in controversy, prior to said marriage, "was once the property of said William McConeghy, but the bill of sale was held as security by one Blair, who also had the slave in his possession, though said McConeghy collected the hire; that in April, 1850, Blair, being about to remove to California, applied to Dr.

E. H. Kelly, to take the negro, and stand in his shoes in relation to him, saying that $250 was due to him on the negro; that Kelly, to accommodate Blair, agreed to this, and paid him $250, and executed his note for $200 more, and took a bill of sale for said negro as security for said money; that the note was handed back immediately to said Kelly; that it was then understood, that Kelly was to keep the negro until said McConeghy paid him the $250, and was to have the slave's services for the use of his money; and that all this took place in April, 1850." The bill of sale from Blair to Kelly, which is made an exhibit to the bill of exceptions, is absolute in form, and recites a consideration of $450.

"It was shown that the plaintiff, at the time of her marriage with said William McConeghy, had no property at all in possession; and that her said husband, who is still alive, was then largely indebted. Plaintiff introduced evidence tending to show that, in 1849 and 1850, he was without means, and had to labor for their support; but the defendant introduced proof which tended to show the contrary. In the spring of 1850, said William McConeghy went to South Carolina, to obtain an interest in some property conveyed to her from her grandfather's estate, but failed to get it. In October, 1850, he went again, and recovered from her executors (?) $368 in money, and four slaves, three of whom he brought with him to Alabama on his return; the fourth, whom he did not bring, being of no value. On his return, or within a short time thereafter, plaintiff paid $250 to said Dr. Kelly, and took from him a bill of sale for said slave," (which is appended as an exhibit to the bill of exceptions, and which is absolute in form, and recites a consideration of $450,) " and the slave was delivered to her. Her husband afterwards mortgaged said slave, as her agent, to raise money for himself, to one James Kelly; and left said slave with Kelly, together with another slave which she received from her grandfather's estate, to hire out, and, from the hire, to pay the money borrowed by her husband. Said James Kelly took possession of said slaves, and hired them out until his mortgage debt was paid; and still con-

tinued to hire them as plaintiff's agent. There was no evidence that these deeds had been recorded, under the act of 1850, or any other act. It was shown that said slave was worth from $400 to $450 ; that the defendant, having a decree against said William McConeghy for a large amount, indemnified the sheriff, and had said slave sold under execution in 1855; that the slave was purchased at the sale by one McGuire, for over $600; and that the defendant received all the proceeds of sale, except the costs. There was no direct proof that the plaintiff had any knowledge of her husband's indebtedness, or of the terms or conditions on which the slave was held by Dr. E. H. Kelly."

"The court charged the jury, among other matters, that if they believed the purchase made by plaintiff was a purchase, and with her own funds, acquired since 1848, then she was entitled to recover; but, if they believed that Dr. Kelly's title was a mere mortgage, and that plaintiff's title was a mere mortgage, and that she knew it to be so when she paid the money, then she could not recover of the defendant in this action, although he had received all the money at the sheriff's sale: that to assert such a right, if she had any, she would have to bring a suit in equity, or sue the purchaser of the slave at law."

This charge, to which the plaintiff excepted, is the only matter assigned as error.

E. S. DARGAN, for the appellant.

CHANDLER, SMITH & HERNDON, *contra*.

WALKER, J.—It is declared by the Code, (§ 2455,) that executions may be levied on an equity of redemption, in either land or personal property, *and that* when any interest less than the absolute title is sold, the purchaser is subrogated to all the rights of the defendant, and subject to all his disabilities. There certainly remains in one who absolutely conveyed a slave, as a mere security for the payment of a debt, "*an equity of redemption.*" Chancellor Kent, in reference to conveyances absolute in form, yet designed to have effect as mortgages, says: "When it

is once ascertained that the conveyance is to be considered and treated as a mortgage, then all the consequences, appertaining in equity to a mortgage, are strictly observed, and *the right of redemption* is regarded as an inseparable incident."—4 Kent's Com. 143. This court, in many decisions, has declared an absolute conveyance, intended only as a security, to be in effect a mortgage, with an equity of redemption in the party making the conveyance. Parish v. Gates, 29 Ala. 254; English v. Lane, 1 Porter, 328. The interest remaining in one who has made an absolute conveyance for the security of a debt, is an equity of redemption, and certainly within the letter of the statute.

Looking beyond the letter, we find no sufficient reason for the conclusion that it is without the spirit of the law. It is true that such an equity of redemption was precluded from the cognizance of a court of law by a rule of evidence, and was susceptible of establishment only in a court of equity. But we cannot say that the legislature designed to observe this wholesome rule of evidence, and to restrict the operation of the statute to equities of redemption evidenced by writing. In construing the part of the law which relates to equities of redemption, we must look at the first clause found in the same section, which authorizes a levy on real property, to which the defendant has a legal title, or a perfect equity, having paid the purchase-money. Under it, the interest of one who has made a parol purchase of land, paid the purchase-money, and entitled himself to a specific performance, might be sold under execution; yet the statute of frauds has always been an insuperable barrier to establishment by parol, in a court of law, of a purchase of land. The purchaser by parol, who has paid the purchase-money, and is entitled to a specific performance, certainly has a perfect equity, and his interest must necessarily come within the operation of the statute. Since the legislature has, in the first clause of the statute, disregarded the distinction, as to the evidence requisite to prove a purchase of land at law and in equity, we are led to impute to it a similar design in the last clause.

There seems to be a similar statute in Kentucky; and it is held by the court of appeals in that State, that the sheriff, being by the law authorized to levy and sell, must, of necessity, have the right to take the property into his possession, and exhibit it at the sale.—Philips v. Morris, 7 J. J. Mar. 279; McIsaacs v. Hobbs, 8 Dana, 270. The same right must be allowed the sheriff in this State; for, without taking possession, he could not levy and sell. Whether it would be the duty of the sheriff, after the sale, to restore the property to the mortgagee, if in his possession at the time of the levy, it is not necessary for us in this case to inquire.

2. The court charged the jury, that if the plaintiff's title was a mere mortgage, and she knew it to be so when she paid the money in consideration of which she obtained the title, then she could not recover in the action, although the defendant had received all the purchase-money at the sheriff's sale. Because it was lawful for the sheriff to levy upon and take possession of the property for the purpose of the sale, and for the defendant to cause him to do so, no cause of action accrued to the plaintiff, against either the sheriff or the defendant, in consequence of the levy and taking of the property. The charge was, therefore, correct, unless some subsequent act made the defendant a tort-feasor. Now, although the sheriff may levy upon and take into possession mortgaged personal property, by virtue of a *fieri facias* against the mortgagor; yet the equity of redemption is alone liable to levy and sale. If he should sell the entire interest in the property, his sale would include the right of the mortgagee, as well as of the mortgagor. The evidence in this case conduces to show, that the sheriff did not restrict his sale to the equity of redemption, or to such interest as might be in the defendant in execution, but sold the entirety of the property in the negro. The court could not, therefore, assume that the sheriff did not sell the interest of the plaintiff as mortgagee, as well as the interest of the defendant as mortgagor. If he did so, he was a wrongdoer in reference to the plaintiff, and liable in an action of trover, upon the principle settled in the cases of Smyth

v. Tankersly, 20 Ala. 212, and Parminter v. Kelly, 18 Ala. 716.—See, also, O'Neal v. Wilson, 21 Ala. 288; White v. Morton, 22 Verm. 15; Melville v. Brown, 15 Mass. 82. The evidence also conduces to show that the defendant procured the sheriff to make the sale which he did make, by indemnifying him, and received the entire purchase-money arising from the sale of the entirety of the property. Upon those facts, the defendant would be equally with the sheriff guilty of the conversion.—1 Chitty on Pleading, 79, 80; Calkins v. Lockwood, 17 Conn. 154; Clifton v. Grayson, 2 Stew. 412.

3. We regard the question of the right of a feme covert to maintain an action of troyer, for the conversion of her separate estate, as settled by the decision in the case of Pickens v. Oliver, 29 Ala. 528.

The judgment of the court below must be reversed, and the cause remanded.