## GOODE & ULRICK vs. LONGMIRE.

[TRIAL OF RIGHT OF PROPERTY IN SLAVES.]

1. *Levy of attachment or execution on vested remainder.*—A vested remainder in slaves cannot, either at common law, or under the statutes of this State, be attached or seized under execution during the continuance of the life estate, while the slaves are in the possession of the tenant for life.

2. *What constitutes wife's statutory separate estate.*—Where a vested remainder in slaves, bequeathed to the wife, passed to the husband on his marriage prior to the passage of the "woman's law" of 1848, and the tenant for life conveyed his interest to the wife in 1852, the particular estate does not merge in the remainder, but constitutes a part of the wife's statutory separate estate.

APPEAL from the Circuit Court of Monroe.

Tried before the Hon. C. W. RAPIER.

THIS was a trial of the right of property in several slaves, between the appellants, as plaintiffs in attachment against William M. Longmire, and Mrs. Sarah J Long-

mire, the wife of said defendant in attachment, as claimant. The plaintiffs' attachment was sued out on the 23d December, 1857, and was levied by the sheriff, on the next day, on the slaves in controversy, to-wit, Caroline and her five children, who were found at the dwelling-house of said defendant in attachment. The facts disclosed on the trial, as stated in the bill of exceptions, are substantially the following :

Caroline was the daughter of a slave named Rose, who was given to the claimant's mother, (then the wife of B. F. Lyon,) in South Carolina, by her father, and went into the possession of said Lyon and wife under the gift. B. F. Lyon died in South Carolina, in 1824, leaving a last will and testament, which was there admitted to probate, in the following words : " This I leave as my last will and testament : that my beloved wife, Susannah B. Lyon, keep all my property together as it now is, and give my children a liberal education ; and when they become of age, or marry, that they have an equal share of the estate— that is, leaving my beloved wife one-third of the estate, and at her death all to go to my children ; and I leave my beloved wife as sole executrix of my estate." Said Lyon and wife had two children, one of whom is the claimant. The woman Caroline was born after his death. Mrs. Lyon qualified as executrix of her husband's will, and took possession of all his property ; including in her inventory of the estate the woman Rose and her three children. In 1827, Mrs. Lyon married one Garrett Longmire, and afterwards removed with him to this State, in company with her children and slaves. The claimant and William M. Longmire were married in this State, in 1838, or 1839 ; and soon after their marriage, Mrs. Longmire (formerly Mrs. Lyon) divided the slaves in her possession between herself and her two children, retaining Caroline and her children as a part of her own share. In 1852, Mrs. Longmire made another division of the slaves remaining in her possession, and Caroline and her children were then given or allotted to the claimant. Garrett Longmire never claimed any interest in the slaves while in his wife's possession.

The court charged the jury, on this evidence, as follows:

"1. If the slave Rose was given to Susannah B. Lyon by her father, and was reduced to the possession of her husband, B. F. Lyon, during coverture, in South Carolina; then, by the common law, which, in the absence of proof to the contrary, is presumed to prevail there, said slave became absolutely his property by such reduction to possession.   2. By the terms of the will of said B. F. Lyon, the share of the estate which fell to Susannah B. was a life estate in her, with remainder over to her children.   3. The right of the children to this remainder vested on the death of said B. F. Lyon; and on the marriage of the claimant, his daughter, with said William M. Longmire, she ceased to be a tenant in common with the other remainder-man, and her said husband became tenant in common in her stead.   4. If the claimant intermarried with said William M. Longmire before the 1st March, 1848, when the act securing to married women their estates went into operation, then the right which said Longmire acquired by his marriage was not affected by the act of 1848, and the remainder interest in the wife's property under the will became absolute in the husband.   5. If Mrs. Susannah B. Longmire conveyed her life interest in the attached slaves to her daughter, the claimant, in 1852, this life interest did not pass to the husband by virtue of his vested interest in the remainder, but would be held by the wife, as her separate estate, under the acts of 1848 and 1850.   6. Though the remainder interest in the slaves may have become vested in said William M. Longmire, yet, while the life interest of Mrs. Susannah B. Longmire remained in the claimant, as her separate estate, during the life of her mother, the remainder interest of William M. Longmire would not be subject to attachment or execution at law."

To the 5th and 6th of these charges the plaintiffs excepted, and requested the court to give the following charges: "1. In the absence of any adverse possession, the possession of the tenant for life, under the will creating the estate for life and the remainder, was the possession of the remainder-man; and if this interest vested

before the act of 1848 was passed, then, upon the property being reduced to actual possession by William M. Longmire, though after the act of 1848, the title became absolute in him, and the wife cannot claim it under the act of 1848. 2. If the remainder in the slaves is absolute in William M. Longmire, the husband, (the claimant, his wife, having the life interest of her mother as her separate estate,) then the interest of the husband is subject to levy under attachment at law, and can be sold under execution against him." The court refused each of these charges, and the plaintiffs excepted.

The charges given, and the refusals to charge as requested, to which exceptions were reserved, are now assigned as error.

ANDERSON & BOYLES, for appellant.—1. The court erred in giving the 5th charge, and in refusing the 1st charge asked. The claimant's title as remainder-man accrued at the death of the testator.—17 Ala. 726; 30 Ala. 712. On her marriage with William M. Longmire, after the slaves had passed into the possession of the tenant for life, the husband's marital rights attached.—Walker v. Fenner, 28 Ala. 367. On the claimant's subsequent acquisition of her mother's interest, it enured to the use of the larger estate, and was merged in it; so that the husband might sell it, or creditors might subject it to his debts.—2 Dev. & Bat. 133. Neither the Code, nor the act of 1848, operates on rights which existed at the time of its enactment.—Kidd v. Montague, 19 Ala. 619; Manning v. Manning, 24 Ala. 386; Stearns v. Weathers, 30 Ala. 712; Hardy v. Boaz, 29 Ala. 168. The provisions of the Code do not apply to separate estates created by deed prior to 1848, although the marriage was subsequent.—Willis v. Cadenhead, 28 Ala. 472.

2. The court erred, also, in giving the 6th charge, and in refusing the 2d charge asked. A vested remainder in slaves may be sold under execution during the possession of the tenant for life.—2 Dev. & Bat. 133; 4 ib. 384; 10 B. Monroe, 394; 13 ib. 511. A vested remainder or reversion in slaves may be sold under execution, subject

Goode & Ulrick v. Longmire.

to the rights of a hirer or other particular tenant.—7 Ired. 14, 47; 11 Ired. 424; 3 Ired. Eq. 522; 31 Ala. 447; 27 Ala. 126–7; 19 Ala. 619. There is no distinction in principle, between taking and selling the right of one of two or more joint owners who are in the present possession of a chattel, or taking the goods of a partnership under execution against one of the partners, and taking and selling a vested remainder during the existence of the particular estate; nor is there any greater hardship in the latter, than in either of the former cases; and yet the principle has been long settled in both the former cases. Winston v. Ewing, 1 Ala. 129; Moore & Co. v. Sample, 3 Ala. 319; 17 Ala. 20, 362; 3 J. J. Már. 215. Independently of these authorities, and the principles on which they are based, the right to sell a vested remainder during the continuance of the particular estate, may be safely rested on section 2455 of the Code.—McConeghy v. McCaw, 31 Ala. 447; 7 J. J. Mar. 279; 8 Dana, 270; 3 Ired. Eq. 522.

E. S. DARGAN, contra.—1. At common law, a sheriff was required to take possession of goods levied on, and a mere levy without taking possession was void.—Banks v. Evans, 10 Sm. & Mar. 35; Rice v. Tower, 1 Gray, (Mass.) 426; Bryan v. Bridge, 6 Texas, 137; Price v. Shipps, 16 Barbour, 585. The law could not be so inconsistent with itself, as to allow a sheriff to levy and take possession, and then permit him to be sued as a trespasser; and it is certain that, if he took the possession from the tenant for life, he would commit a trespass. The common law, then, cannot authorize a remainder in slaves to be levied on during the continuance of the life estate.—Dud. (S. C.) R. 62. The North Carolina cases, which hold that such a levy may be made, cannot be sustained by the rules of the common law, and must be founded on local statute. The cases of partners and joint owners are not analogous to this; because each joint owner or partner is entitled to the possession, and the sheriff, in taking possession, does no more than they can do, and is not guilty of a trespass.

2. There is nothing in the Code which changes this rule of the common law. The first subdivision of section 2455 relates exclusively to real estate. The second subdivision evidently contemplates possession in the defendant as requisite to a levy and sale. The third subdivision authorizes a levy and sale of an equity of· redemption in either land or personal property. It may well be questioned, whether this last clause authorizes a levy and sale of an equity of redemption, when the possession of the property is not with the defendant. But, be this as it may, it does not include a remainder, which is in no sense an equity of redemption. The statute cannot be extended by construction, and the courts cannot alter the common law further than it has been altered by the legislature.

3. The gift of the particular estate to the claimant, in 1852, became her separate estate under the Code, and did not pass to her husband; consequently, the property was in the same condition as if the gift had never been made, and the possession had remained with the claimant's mother.

R. W. WALKER, J.—1. To constitute a levy on personal property, the officer must assume dominion over it. He must not only have a view of the property, but he must assert his title to it, by such acts as would render him chargeable as a trespasser, but for the protection of the process.—Westervelt v. Pinckney, 14 Wend. 123; Beckman v. Lansing, 3 Wend. 450; Bryan v. Bridge, 6 Texas, 141; Learned v. Vanderburgh, 7 How. P. R. 379; Crocker on Sheriffs, §§ 369, 427–8; 5 Denio, 198; 9 Ala. 519; Smith v. Niles, 20 Vermont, 320.

If slaves may be taken, under attachment against one who has a vested remainder in them, the sheriff, in order to complete the levy, must be authorized, not only to seize the slaves, but to take them into his custody, and, unless they are replevied, to hold them to satisfy the judgment which the creditor may recover. For, when the law gives a man anything, it gives him the means of obtaining it, (Franklin's case, 5 Coke, 47;) and a sheriff who has the right to levy on property, must have the

right to do all that the law requires to enable him to sell it.—McConeghy v. McCaw, 31 Ala. 451. But the common law never allowed the sheriff to commit a trespass on one person, in order to levy on the property of another. This plain principle would seem to demonstrate that, in the absence of some statutory authority for such a proceeding, a vested remainder in slaves cannot be seized under execution or attachment at law. The tenant for life is the temporary owner of the property: he is entitled to the exclusive possession and use of the property during the continuance of the life estate; and a violation of this possession, either by the remainder-man or a third person, is a trespass.

Again, the sheriff cannot levy on property which he cannot sell. The ultimate purpose of the levy is to make sale. As a general rule, delivery to the purchaser is essential to a complete sale of a chattel; and this, *it has been held*, is as true in the case of a sale by a sheriff as any one else.—Dargan v. Richardson, Dudley's L. & Equity, 62, 65.

What was said by Lord Ellenborough, in Scott v Scoley, (8 East, 484,) in relation to writs of *fieri facias* and *venditioni exponas*, is applicable to attachments under our laws: " The language of these writs and returns evidently imports, that the goods and chattels, which are the object of them, are properly of a *tangible* nature, capable of *manual seizure*, and of being detained in the sheriff's *hands and custody;* and such also as are conveniently capable of sale and transfer by the sheriff, to whom the writ is directed, for the satisfaction of a creditor."—Code, §§ 2516, 2525, 2527–31, 2536.

To say that a life tenant has the right to the exclusive possession and use of the property, and yet that the sheriff may, without some legislative enactment conferring the power, seize it under execution or attachment against another, and sell and deliver it to a third person, seems to be a proposition which is refuted by stating it.

It is true that the courts of North Carolina and Kentucky have held, that a vested remainder in slaves is the subject of levy and sale under execution; and that, as a

levy necessarily implies a seizure, the sheriff may, by virtue of an execution against the remainder-man, take the slaves out of the possession of the tenant for life, retain the custody and control of them, and bring them to the place of sale.—Knight v. Leak, 2 Dev. & Batt. 133; Carter v. Spencer, 7 Ired. 14; Blanton v. Morrow, 7 Ired. Eq. 47; Myers v. Davis, 10 B. Monroe, 399; Daviers v. Myers, 13 B. Monroe, 512; McIsaacs v. Hobbs, 8 Dana, 270.

With the exception of these decisions, which we are not able to reconcile with sound legal principles, all the cases and authorities upon the subject that we have met with, are opposed to the idea, that a remainder in slaves can be taken under execution or attachment at law, during the continuance of the life estate.

Thus, as far back as Waller v. Hanger, (3d Bulstrode, 17,) it is said—"A man doth gage goods in pledge for £40 borrowed upon them; afterwards, the debtor is condemned in £100 debt to another: these goods shall not be taken in execution, until the £40 be paid, for the creditor hath an interest in them." And there can be no doubt that, at common law, goods pawned prior to the execution cannot be taken under execution against the pawnor, until the money is paid for which they were pawned.—10 Viner's Abr. 560; Story Bailm. § 353; Stief v. Hart, 1 Comstock, 28, 36. So, beasts let for years cannot be taken in execution for a debt of the lessor upon a recovery against him, (1 Dyer, 67 (b), note; 3d Bulstr. 17;) and this is because the lessor himself could not have dispossessed the lessee during the term, and of course the lessor's creditor cannot.—10 Viner's Abr. 560, § 4; 8 East, 476, 479.

In Allen v. Scurry, (1 Yerger, 36,) the supreme court of Tennessee, in a well-considered opinion, decided, that a vested remainder in slaves cannot be levied on and sold under execution at law.

The same principle is, in effect, declared by the court of appeals of South Carolina, in Dargan v. Richardson, Dudley's L. & Eq. R. 62.

In McGee v. Currie, (4 Texas, 217,) the court says, in

reference to the case of a hired slave—"By the hiring, the property is believed to be so completely changed, that the negro could not be taken in execution for the debt of the owner, until the expiration of the time for which he was hired, unless the lien had attached before the transfer of possession by hiring."

As a general rule, property which cannot be sold under execution, cannot be attached, and whatever may be sold under execution, may be attached.—Drake on Att. § 244, and cases cited. It is also said, in general terms, that an attaching creditor can acquire no greater rights in the property than the defendant had at the time of the attachment; that he cannot attach property, as belonging to his debtor, to the injury of third persons; and that if personal property be in such a situation, that the defendant has lost his power over it, it cannot be taken under attachment against him.—Hepp v. Glover, 15 Louisiana, 461, 465; Babcock v. Maltbie, 7 Martin, N. S. 139; Drake, § 245; Hartford v. Jackson, 11 N. H. 146.

Hence, it has been held, that a chattel pawned or mortgaged is not attachable in an action against the pawnor or mortgagor.—Drake, § 245, and cases cited. So, it has been decided, that where property has been bailed for hire for a specific time, a creditor of the bailor cannot attach the property, and take it from the custody of the bailee, during the term of bailment.—Hartford v. Jackson, 11 N. H. 145. In like manner, it has been held, that if cattle be leased for a term of years, they cannot be attached and sold as the property of the lessor, even though the sale be with a reservation of the lessee's right to retain possession of the property during the continuance of the term.—Smith v. Niles, 20 Vermont, 315. See, also, Lambeth v. Turnbull, 5 Robinson, 264; Mitchell v. Byrn, 6 Richardson, 171; Drake Att. § 245.

We think it is clear, both upon principle and authority, that, in the absence of some statute which justifies the proceeding, the manual taking of goods by an officer (and the very idea of a *levy* implies this) is not authorized by an execution or attachment against one who has neither

the possession nor the right to the possession of the property.

The case of partners and joint owners, to which this is sought to be assimilated, is not analogous. The right of the sheriff, under an execution against one partner or joint owner, to levy upon the common property, rests upon the ground, that the partners or joint owners have severally the right to the possession of the entire property; and the sheriff, by taking possession, does no more than the defendant in execution could do.—1 Coms. 32, 38.

We find in the Code nothing which so far changes the common law, as to authorize the sheriff to take slaves under an execution or attachment against one who has only a vested remainder in them. Section 2455 of the Code defines the property which may be levied on by executions. The 1st subdivision of that section relates exclusively to real estate. The 2d subdivision is as follows: " 2. On personal property of the defendant, (except things in action,) whether he has the absolute title thereto, or the right only to the possession thereof for his own life, the life of another, or any shorter period; but this does not apply to a possession acquired by a *bona-fide* hiring of a slave or other chattels." This subdivision (except, perhaps, so far as it may exempt from levy and sale the possessory interest of the bailee of a hired chattel, 3 Pick. 255) is simply declaratory of the common law, and cannot be so construed as to authorize the sheriff to commit a trespass, or disturb the prior rights of a stranger to the process, in order to make a levy. The 3d subdivision authorizes the levy of an execution " on an equity of redemption in either land or personal property," and provides that, " when any interest less than the absolute title is sold, the purchaser is subrogated to all the rights of the defendant, and subject to all his disabilities." It *may be* that, under this last subdivision, an equity of redemption may be levied on and sold under an execution, though the possession be with the mortgagee, (31 Ala. 451;) but a vested remainder in slaves is not an equity of redemption; and we cannot hold that the common law is altered, ex-

cept in the particulars in which the legislature has seen fit to change it.

We need not inquire whether, under the Code, and by reason of the general rule that whatever may be sold under execution is subject to attachment, an equity of redemption in personal property can be *attached* when the possession is with the mortgagee. Unless this is so, there is no provision in our statutes, which, in any case, clothes the sheriff with the authority to invade and prejudice the legal rights of strangers to the attachment, by taking property which is rightfully in their possession, in order that he may sell an interest of the defendant therein which does not embrace either the possession or the right of possession.

If slaves may be taken under attachment against the remainder-man, the life tenant must either replevy them, or permit the sheriff to retain them in his possession until the termination of the attachment suit. When slaves attached are not replevied, the sheriff, unless instructed to put them in jail for safe-keeping, "must hire them out, taking a note for the hire, which enures to the *plaintiff*, or to the defendant if the *sale* of the slaves should discharge the judgment."—Code, § 2531. If the tenant for life should replevy the slave, and the latter should die, the life tenant could only discharge himself from liability for the whole amount of the judgment against the remainder-man, by tendering the value of the slave to the plaintiff.—Code, §§ 2538-9. These provisions of the Code are inconsistent with the idea, that a vested remainder in slaves may be attached by taking them out of the possession of the life tenant.

Whether, if the life tenant should assent to the levy and sale, and permit the sheriff to take possession and exhibit the property at the sale, the purchaser would acquire the interest of the remainder-man, we need not decide. No such fact is shown in this case.

2. If the mother of the claimant conveyed her life interest to the claimant in 1852, this life interest became the statutory separate estate of the claimant, and did not pass to the husband by virtue of his vested interest in

remainder. There could be no merger of the life estate in the remainder; because, when the life estate was conveyed to the claimant, the remainder did not belong to her, but to her husband. The two interests were never united in the same person.

Judgment affirmed.